IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL MALIK ALLAH,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JOHN C. THOMAS, et al.,** | : | No. 15-5593 |
| *Defendants*. | : | |

M E M O R A N D U M

PRATTER, J.                                                                                                                                                                                      JUNE 14, 2016

Until recently, Mr. Allah was incarcerated at the Pennsylvania State Correctional Institution in Chester, Pennsylvania.[1] He brings claims against several prison officials and medical personnel under 42 U.S.C. § 1983, for violations of the First and Eighth Amendments stemming from the medical treatment he received in prison and the subsequent handling of his grievances. Defendants John C. Thomas, Shirley Laws-Smith and Louisa Perez filed a motion to dismiss the claims. Defendants John Nicholson PA-C[2] and Dr. Lee Hanuschak also filed a motion to dismiss the claims, raising similar issues with the complaint.

By April 18, 2016, some three to four months after the motions to dismiss had been filed, Mr. Allah had not responded to either motion. Therefore, the Court ordered the plaintiff to respond to both motions by May 4, 2016. It is now five and a half months since the first motion was filed and four and a half months since the second motion was filed and, to date, no response from Mr. Allah has been forthcoming. Because Mr. Allah has not filed a timely response to either motion, provided any explanation for this failure, or complied with the Court's April 18

---

[1] On June 3, 2016, a notice of Change of Address was filed on the docket, indicating that Mr. Allah's address had changed from 500 E. 4th Street, Chester, PA 19013 to what appears to be a residential address in Sharon Hill, Pennsylvania. *See* Doc. No. 19.

[2] This designation refers to a "physician assistant certified."

1

Order, the Court will consider the motions unopposed. For the reasons discussed below, having reviewed the substance of the motions, the Court will dismiss the claims against each of the defendants, based on an analysis of the allegations contained in Mr. Allah's Complaint.

## **Plaintiff's Failure to Oppose the Motions**

The defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all the claims alleged in the complaint and the plaintiff has filed no briefing in opposition. According to the Local Rules of this Court,

> [u]nless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief. In the absence of timely response, the motion may be granted as uncontested except as provided under Fed. R. Civ. P. 56.

E.D. Pa. Local Rule 7.1(c). When a party fails to respond to a motion, the Court has the discretion to grant the motion as unopposed. Dismissal of a plaintiff's claims without an analysis of the merits may be appropriate in instances where the plaintiff has failed to respond to a motion to dismiss after the district court has specifically ordered him to respond and advised him that the case may be dismissed if he fails to do so. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)). Nevertheless, the Court of Appeals "has recommended that trial courts not grant motions to dismiss pursuant to Rule 12(b)(6) in *pro se* civil rights actions without analyzing the merits of the underlying complaint." *Blackshear v. Verizon, DE, LLC*, No. 11-1036, 2011 WL 5116912, at *1 n.1 (E.D. Pa. Oct. 27, 2011) (citing *Stackhouse*, 951 F.2d at 30).

Here, Mr. Allah's response to the first motion to dismiss was due on December 28, 2015. His response to the second motion to dismiss was due on February 3, 2016. After these deadlines passed with no response, the Court set a new date for him to respond and expressly advised him that if he "fails to respond by [May 4, 2016], the Court may consider granting the

motions as unopposed." Consequently, Mr. Allah was on notice that failure to respond to the motions could result in dismissal of his claims because the Court could exercise its discretion to dismiss the claim as unopposed. Nevertheless, given the Court of Appeal's admonition in *Stackhouse*, and given Mr. Allah's status as a *pro se* litigant, before dismissing his claims, the Court will address the merits of his complaint.

## Merits of Mr. Allah's Complaint

### I.   FACTUAL BACKGROUND[3]

The plaintiff's allegations fall into two categories. Mr. Allah's primary claims relate to the medical care he received while incarcerated at SCI-Chester. He alleges that the defendants violated his Eighth Amendment rights by failing to provide him appropriate medical care after he was incarcerated in July 2014. Mr. Allah asserts several specific ways in which the prison medical officials failed to provide him with necessary medical care. In addition, as a result of the allegedly insufficient medical treatment he recieved, he filed several grievances complaining about his care. He claims that the prison officials charged with handling his grievances ignored them and that the conduct of these officials both demonstrates deliberate indifference to his serious medical conditions and served to deny him access to the courts.

In his complaint, Mr. Allah names six individuals employed at SCI-Chester. The first three were involved in Mr. Allah's medical treatment. Dr. Lee Hanuschak and physician assistant John Nicholson treated Mr. Allah for back and nerve pain after he arrived at the prison.

---

[3] The factual background outlined here is drawn from Mr. Allah's Complaint as well as the exhibits attached to that complaint and filed on the docket. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

They were also involved in the decision not to start Mr. Allah on a Hepatitis-C treatment protocol. Mr. Allah also alleges that a "Dr. Koren" treated him for anxiety.[4]

In addition to these medical professionals, Mr. Allah has named three non-medical prison officials as defendants as well. First, John C. Thomas served as the prison facility manager and in that role allegedly failed to respond to the plaintiff's grievances. Mr. Allah alleges that Medical Director Shirley Laws-Smith also failed to respond to his complaints regarding his medical treatment. Finally, he alleges that the facility grievance coordinator, Louisa Perez, failed to process his grievances.

Turing to the substance of Mr. Allah's claims regarding the medical treatment he received at SCI-Chester, Mr. Allah first asserts that his rights were violated by the defendants' failure to provide him with appropriate pain medication. Mr. Allah states that, prior to arriving at the prison, he suffered from nerve pain in his back and legs. He acknowledges that he was offered certain pain medication by prison doctors, including, "Mobic, Naprosyn, Motrin and Relafen," but argues that these medications were insufficient to address his pain. He states that only "Percocet" and "Oxycodone" relieved his pain, prior to his incarceration.

Second, Mr. Allah claims that certain anxiety medication he was provided by the prison was not effective. He states that "Dr. Koren tried me on at least 5 different anxiety [drugs] and none of those drugs worked." He further alleges that the medications provided by Dr. Koren

---

[4] There appears to be some confusion as to who "Dr. Koren" is. The plaintiff has not identified this defendant by his or her full name in the pleadings, nor has he pleaded what role Dr. Koren occupied at SCI-Chester. Additionally, unlike the other defendants, no counsel has entered an appearance on behalf of Dr. Koren, and, therefore, neither of the motions to dismiss have been brought on Dr. Koren's behalf. Nevertheless, as Mr. Allah has been granted leave to proceed in this matter *in forma pauperis*, the Court shall, at any time, dismiss the case if the Court determines that Mr. Allah has failed to state a claim upon which relief can be granted. 28 U.S.C.A. § 1915(e)(2)(B); (West); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("[T]he statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."). For the reasons discussed below, the arguments in favor of dismissing the claims against the named defendants equally support dismissing the claims against Dr. Koren. Consequently, the Court will exercise its authority under § 1915 and dismiss the complaint in its entirety as to "Dr. Koren."

caused him to suffer side effects, including "lock jaws [sic], seizures, slurred speech, nightmare, etc."

Third, Mr. Allah states that he has Hepatitis-C and asserts that he is entitled to receive treatment for this condition in prison. There is no assertion in the complaint that Mr. Allah had been receiving treatment for his Hepatitis-C prior to his incarceration. Mr. Allah alleges that he was told by Dr. Hanuschak and Mr. Nicholson that he would not be placed on the Hepatitis-C treatment list because he was scheduled to be paroled in less than a year. He was also told by Dr. Hanuschak and Mr. Nicholson that he was not entitled to receive a "new" Hepatitis-C drug, "HARVONI" due to the expense.

Finally, Mr. Allah alleges that he was overcharged by the prison for a pair of glasses and that the prison failed to issue him a cane to aid his mobility.

In the wake of these circumstances, Mr. Allah alleges that he filed several grievances challenging the prison medical staff's failure to provide him with the services to which he believes he was entitled. He alleges that the prison officials either denied or ignored these grievances and that this failure to adequately respond constitutes deliberate indifference to his serious medical needs. He also claims that the prison's failure to process his grievances has denied him access to the courts

## II. STANDARD OF REVIEW

In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible in its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[T]he Court must consider only those facts alleged in the complaint, accepting all allegations as true and drawing all reasonable inferences in favor of the plaintiff. Courts are not, however, bound to accept as true legal conclusions couched as factual allegations." *Alston v.*

*Wenerowicz*, No. 14-2691, 2016 WL 878305, at *1 (E.D. Pa. Mar. 7, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)). In evaluating the sufficiency of the complaint, the Court will take into consideration the plaintiff's *pro se* status. While *pro se* litigants are traditionally given "greater leeway where they have not followed the technical rules of pleading and procedure," all parties must nonetheless follow the Federal Rules of Civil Procedure. *Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 648 (E.D. Pa. 2010) (citing *Tabron v. Grace*, 6 F.3d 147, 153, n.2 (3d Cir. 1993).

## III.  DISCUSSION

As noted above, Mr. Allah has alleged two separate modes of conduct that violated his rights. The Court will address them in turn.

### a. Eighth Amendment Claims

Mr. Allah first alleges that the defendants demonstrated deliberate indifference to his serious medical needs in violation of the Eighth Amendment based upon the type of treatment that he received while incarcerated at SCI-Chester.

The Supreme Court addressed a situation in *Estelle v. Gamble*, 429 U.S. 97 (1976), that is factually analogous to the allegations raised by Mr. Allah. In *Estelle*, an inmate injured his back when a bale of cotton fell on him while he was performing his prison work assignment. The plaintiff reported his injury to the prison medical staff who evaluated him and subsequently treated his symptoms for several weeks with various drugs and bed rest. Eventually, despite complaining that his back pain persisted, the inmate was ordered to return to his prison work assignment. The inmate brought a claim under § 1983, alleging that the treatment he received for his back pain was inadequate. The district court dismissed the claims against the medical officials who treated the plaintiff, and this dismissal was ultimately affirmed by the Supreme Court.

The Supreme Court first explained that because the Government has an obligation to provide medical care to incarcerated individuals, an inmate may state a cause of action under § 1983, based upon demonstrated deliberate indifference to his serious medical condition by prison officials.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. 104-05 (citations omitted); *accord Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

That said, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted). Allegations of inadvertent failure to provide adequate medical care is not sufficient to state a claim—"[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Atkinson*, 316 F.3d at 272 (citing *Estelle*, 429 U.S. at 106). In the prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct.13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care."). The Third Circuit Court of Appeals has stated it is "well-established" that "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977); *Massey v. Hutto*, 545 F.2d 45, 46 (8th Cir.1976); *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867–68 (2d Cir. 1970)). Whether or not specific diagnostic techniques or forms of treatment were utilized is a classic

example of the exercise of medical judgment. *Estelle*, 429 U.S. 107; *Robinson v. Beard*, No. 08-3156, 2009 WL 2215088, at *4 (E.D. Pa. July 22, 2009) ("Although Plaintiff does not agree with Defendant Arias' medical treatment, disagreement is not enough to establish deliberate indifference.").

Based upon *Estelle* and its progeny, the Court finds that Mr. Allah has failed to state a claim against any of the defendants for deliberate indifference to his serious medical conditions. Mr. Allah acknowledges in his complaint that he received ongoing medical care from Drs. Hanuschuk and Koren as well as physician assistant Nicholson for both his pain and his anxiety. Ultimately, the substance of his complaint is his disagreement or personal dissatisfaction with the medical treatment they prescribed. The plaintiff, however, has no constitutional right to receive one particular course of treatment, nor does an inmate's subjective belief as to the proper treatment trump the judgment of a treating medical professional. *See DeBoer v. Luy*, 70 F. App'x 880, 883 (7th Cir. 2003) ("[T]he Eighth Amendment does not guarantee that an inmate receive specific treatment; it guarantees only reasonable measures to meet a substantial risk of serious harm."); *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice."); *Foye v. Prime Care Med., Inc.*, No. 09-2933, 2015 WL 1650257, at *7 (E.D. Pa. Apr. 14, 2015) ("We believe that the question of which pain medication was appropriate falls squarely within the professional judgment of the medical providers.") (citing *Gause v. Diguglielmo*, 339 F. App'x. 132, 136 (3d Cir. 2009)).

The allegations in this complaint fully support a conclusion that the defendants were exercising their medical judgment when proscribing pain and anxiety medication as well as when determining that a cane was not medically necessary for Mr. Allah. Consequently Mr. Allah is unable to state a claim based on the alleged facts.

Likewise, the Court finds that Mr. Allah does not state a claim as to his allegations regarding the defendants' treatment (or rather non-treatment) of his alleged Hepatitis C. The courts have encountered claims from inmates with Hepatitis C challenging their access to treatment and held that compliance with the Department of Corrections treatment protocol will generally rebut any allegation of deliberate indifference to an inmate's serious medical needs. *See Barndt v. Pennsylvania Dep't of Corr.*, No. 09-1790, 2011 WL 4830181, at *9 (M.D. Pa. Aug. 31, 2011), *report and recommendation adopted sub nom. Barndt v. Bohinski*, No. 09-1790, 2011 WL 4830174 (M.D. Pa. Oct. 12, 2011) (collecting cases). As the Third Circuit Court of Appeals has explained:

> The Hepatitis C treatment called for in the protocol takes one year to complete. The rationale for implementing the minimum sentence rule as part of the protocol is spelled out in the DOC's memo of February 8, 2000. Apparently, it is more detrimental to an inmate's health to discontinue or interrupt treatment prior to its completion, than it is to defer treatment until after his release. Thus, implementing the minimum sentence rule as a prerequisite to participation in the Hepatitis C protocol served a legitimate penological goal.

*Iseley v. Dragovich*, 90 F. App'x 577, 581 (3d Cir. 2004); accord *Runkle v. Pennsylvania, Dep't of Corr.*, No. 13-137, 2013 WL 6485344, at *9 (W.D. Pa. Dec. 10, 2013).

Similarly, failure to provide the most expensive treatments to a prisoner is not the basis of an Eighth Amendment claim. "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatment of choice." *Brightwell v. Lehman*, No. 03-205, 2006 WL 931702, at *8 (W.D. Pa. Apr. 10, 2006).

Mr. Allah alleges that the defendants determined that under the prison policy, he was not a candidate for treatment. He has alleged no facts indicating that he does, in fact, qualify for treatment under the Department of Corrections Hepatitis C protocol. Apparently, his Hepatitis C did not require treatment prior to his incarceration, and his condition was not alleged to have

9

significantly deteriorated while he was in prison. For these reasons, Mr. Allah has failed to state a claim regarding treatment for Hepatitis C.

### b. Claims regarding Mr. Allah's Grievances

Mr. Allah also alleges violations of his right to have access to the courts, based upon the defendants' failure to respond to, or investigate, his grievances. There is, however, no federal right to a grievance process in prison. *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) ("Access to prison grievance procedures is not a constitutionally-mandated right."); *accord Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011). Prison officials are not under a legal obligation to investigate prisoners' grievances. *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011) (citing *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973).

To the extent that Mr. Allah is alleging that the defendants' treatment of his grievances has denied him meaningful access to the courts, he is mistaken. A prison official's refusal to entertain an inmate's grievance does not deny him access to the courts. *Winn v. Dep't of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *see Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004) (citing *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir.1998)). Failure to respond to a prisoner's grievance allows an inmate to overcome an affirmative defense of exhaustion at trial. *Winn*, 340 F. App'x at 759. Ultimately, there is nothing in the complaint to support a claim that Mr. Allah has been denied access to the courts.

Therefore, as a matter of law, Mr. Allah's allegations regarding Mr. Thomas and Ms. Laws-Smith's failure to respond to his grievances, and Ms. Perez's failure to adequately process his grievances, fail to state a claim upon which relief can be granted.

## IV.  CONCLUSION

For the above reasons, the plaintiff has failed to state any claim upon which relief can be granted.  The Court will therefore grant the defendants' motions and dismiss the plaintiff's complaint in its entirety.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge
